**HAMRICK'S, INC.**

**v.**

**Deborah ROY and Kevin Shepherd.**

Court of Appeals of Tennessee,
at Knoxville.

Feb. 11, 2002 Session.

April 29, 2002.

Permission to Appeal Denied by
Supreme Court Sept. 2, 2003.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Deborah Roy ("Roy") was employed at Hamrick's, Inc. ("Hamrick's" or "Plaintiff") and was provided health insurance through a self-funded company sponsored health insurance plan ("Plan") covered by ERISA. Roy was involved in an automobile accident. The driver of the other automobile, Mr. Nguyen, was responsible for the accident. Roy retained Kevin Shepherd ("Shepherd") to represent her in the lawsuit against Nguyen. Both Roy and Shepherd (collectively referred to as "Defendants") signed a Reimbursement Agreement ("Agreement") wherein they agreed to reimburse Hamrick's out of any proceeds collected in the underlying tort lawsuit for medical expenses related to the accident. Unbeknownst to Hamrick's, Roy settled her lawsuit against Nguyen for $25,000.00. Roy retained two-thirds of the proceeds and Shepherd retained one-third. Hamrick's filed this lawsuit seeking to enforce the Agreement and recover the sums it paid on Roy's behalf. The Trial Court entered judgment against both Defendants for their pro-rata share of the settlement proceeds due Hamrick's under the terms of the Agreement. Defendants appeal. We affirm.

### Background

This lawsuit involves Plaintiff's successful attempt in the Trial Court to recover sums it paid on Roy's behalf pursuant to a company sponsored health insurance plan. Plaintiff employed Roy and provided her with health insurance through the Plan. Roy was involved in an automobile accident in August of 1997 with Mr. Nguyen. According to Plaintiff, pursuant to the terms of the Plan, it retained the right to

Kevin W. Shepherd, Maryville, Tennessee, for the Appellants Deborah Roy and Kevin Shepherd.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the Appellee Hamrick's, Inc.

seek subrogation and/or reimbursement from any sums received by Roy from third parties responsible for the automobile accident. Plaintiff claimed since the Plan was controlled by ERISA, the common law "made whole" doctrine did not apply and Plaintiff was entitled to collect the full amount of its subrogation interest. Both Roy and Shepherd had executed the Agreement whereby they agreed to honor Plaintiff's subrogation interest, which Plaintiff claimed totaled $30,985.12. Plaintiff asserted Defendants had settled the underlying third-party tort action and failed to honor its subrogation and/or reimbursement claim.

The Agreement, entered into on October 2, 1997, and signed by Defendants, provides as follows:

> In accordance with the provisions of the Employee Benefit Plan provided in the Hamrick's, Inc. Plan Documents, the undersigned hereby agrees to reimburse and pay promptly to the Hamrick's, Inc. Health Benefit Plan an amount not exceeding the aggregate amount of benefits paid under said Plan for charges incurred as a result of injury or disease sustained on or about 8–12–97 in the State of Tenn[.], such payment to come from any recovery by the undersigned of (sic) for their benefit from any person, corporation, or organization as a result of the incident therein referenced.
>
> The undersigned further agrees to execute instruments and papers, furnish information and assistance, and take other necessary and related action as The Plan Supervisor may require to facilitate its rights of reimbursement under the Reinsurance Plan.
>
> The undersigned represents and warrants that no release or discharge has been given with respect to his or her

rights of recovery described herein and that the undersigned has done nothing to prejudice said rights.

After filing an answer denying the pertinent allegations of the complaint, Defendants filed a motion to transfer the lawsuit to federal court, apparently claiming the federal courts had exclusive jurisdiction over the claim. Plaintiff responded by pointing out Defendants' motion was filed almost four months after they were served with process, and, therefore, the time period in which to remove the case to federal court had expired.[1] Defendants then filed a motion to dismiss for lack of subject matter jurisdiction. Defendants claimed, pursuant to 29 U.S.C. § 1132(e)(1), participants and beneficiaries to a plan governed by ERISA could maintain a lawsuit in state court, but a fiduciary could not. Plaintiff responded by arguing its subrogation claim was not a cause of action brought pursuant to ERISA. The Trial Court denied Defendants' motion to dismiss.

The case was tried in August of 2001. The first witness was Karen Paris ("Paris"), who for eight years was the "company nurse" and Plaintiff's administrator of employee benefits. Paris first learned Roy was involved in an automobile accident when she received a claim form indicating there had been an automobile accident. Paris stated when she receives this type claim, she will "automatically send out subrogation [paperwork] to see if they want us to pay the claims." In addition to the language contained in the Agreement signed by Defendants, Paris identified the language contained in the actual Plan regarding subrogation. The Plan provides:

> SUBROGATION AND OTHER RIGHTS: This Plan may withhold payment of benefits

---

1. The ruling by the Trial Court on Defendants' motion to transfer has not been included in the record on appeal. We assume this motion was denied as the Trial Court tried the case.

when a party other than the employee, dependent, of the Plan, may be liable for expenses until liability is legally determined. However, in the event any payment is made under this Plan for which any party other than the employee, dependent, or this Plan may be liable, this Plan shall be subrogated to all the rights of recovery to the extent of such payments by this Plan. Any employee, dependent, or other person or organization receiving payment from this Plan shall execute and deliver instruments and papers and do whatever else necessary to secure such rights to the Plan, and shall do nothing either before or after payment by the Plan to prejudice such rights.

Paris explained no payments would have been made for injuries resulting from the automobile accident if Roy had not signed the Agreement. Once the signed Agreement was received, Plaintiff made payments for the medical expenses related to the automobile accident. Paris considered anything related to Roy's neck injury as caused by the automobile accident. Paris relied on the ICD–9 diagnosis codes when determining what bills were for treatment for the neck injury. In the lawsuit filed by Plaintiff, Paris claimed Plaintiff was seeking only reimbursement for claims paid on the neck injury. The ICD–9 Codes are used industry wide and are also used by Medicare and Medicaid.

Paris had no communications with Roy from the time she received the signed Agreement in 1997 until a letter was sent to Shepherd in May of 2000 requesting an update on the status of the lawsuit against Mr. Nguyen. In this letter, Paris claimed $31,001.92 had been paid for medical bills related to the accident. Shepherd replied to the letter, stating Nguyen had minimum insurance limits of $25,000.00, which Shepherd claimed "did not even come close to

compensating Ms. Roy for the permanent injury which she received in the accident." According to Shepherd, there were "not available funds for the money which Hamrick's has sought against Ms. Roy in this matter. As a result, this case did not proceed to trial but instead, we voluntarily dismissed her claim." On cross-examination, Paris indicated Plaintiff was seeking subrogation or reimbursement for injuries related to the neck, including any worsening of a pre-existing neck injury caused by the automobile accident. Paris admitted she relied primarily on the ICD–9 codes when trying to determine what medical bills involved treatment to the neck which she believed were related to the automobile accident.

Roy testified she began working for Hamrick's in 1994 and worked there four years. After the automobile accident, Roy suffered a work-related injury. When questioned about the subsequent work-related injury, Roy testified as follows:

Q. Okay. You were also asked about the workers' compensation action. The fact of the matter is that when you hurt your back—when you hurt yourself on the job, that was to your low back; is that right?

A. Yes.

Q. It didn't involve your neck; did it?

A. Well, I can't really say it didn't bother my neck because of my spine, my whole spine.

Q. Well, do you remember in the workers' compensation action me taking your deposition and asking you what injuries you had in that incident, and you responded that you had injured your back; and I said what portion of your back, and you said low back?

A. Yes.

Roy testified the automobile accident aggravated her neck pain. Roy admitted

being treated for neck problems in the past, but she had completed a regimen of physical therapy and was pain free at the time of the automobile accident. The accident caused her neck pain to worsen and she developed left arm pain and numbness. She did not have numbness in her arm prior to the automobile accident. Roy continued to have problems with her neck and left arm and eventually underwent surgery. She continued to have problems with her neck, but the surgery alleviated the pain and numbness in her left arm. Roy admitted the pain and numbness in her left arm were related to the automobile accident. The lawsuit pertaining to the automobile accident was settled for $25,000.00. Roy did not inform Hamrick's of the settlement. Roy was asked what medical bills she claimed, while that litigation was still pending, were incurred as a result of the automobile accident, and she stated:

Q. In that accident you were asserting that you had medical expenses that were even more than the $25,000 in coverage that he had related to that accident; weren't you?

A. I guess so.

Q. Well, do you remember me taking your deposition here just a few weeks ago and asking you if you had asserted [in] that claim that the amount of your medical bills that you had which you were attributing to the accident and asking Mr. Nguyen to compensate you for exceeded the amount of $25,000, and you answered right?

A. I guess. I don't believe all the medical bills were attributed to the accident only. I was hurt before the accident.

\* \* \*

Q. But I guess the question is in that accident in order to—in that lawsuit in order to obtain the settlement you were asserting that they were related at that time?

A. I guess I was.

Q. And it's your position now that the only thing that's related is the emergency room visit and one follow-up visit with Dr. Burkhart?

A. Yes, that's right.

Roy then admitted Mr. Nguyen's insurance company did not pay her $25,000.00 simply for an emergency room visit. The Trial Court then asked Roy the following:

THE COURT: Are you telling me you didn't assert anything [was related] in the previous case? ... Are you telling me you did not assert anything in that previous case about these bills? What are you telling me you asserted in the previous case about these bills?

THE WITNESS: Well, if you're asking for an amount, I didn't.

THE COURT: Did your lawyer for you? What did you tell them was caused by the motor vehicle accident?

THE WITNESS: That it had aggravated my neck condition.

THE COURT: Did you say the surgery was related or not?

THE WITNESS: I believed that it was at the time, that part of it was, yes.

Roy testified Hamrick's did not attempt to "stand in [her] place" in the automobile accident, did not assist with that lawsuit, and did not share in the costs. She further admitted, however, that she never asked Hamrick's to assist in any way. In the automobile accident lawsuit, Roy's husband also filed suit as a plaintiff. Roy stated she "split" the proceeds equally with her husband.

Shepherd testified because he was not a physician, he really could not say what was or was not related to the accident. Shepherd did, however, identify a letter he sent

to Mr. Nguyen's insurance company which states, in relevant part, as follows:

I understand from your previous correspondence to us that Mr. Nguyen has insurance through you and carries coverage up to $25,000.00 per person per accident. Please accept this letter as our demand for policy limits on this matter. In the accident referenced above, Ms. Roy's forehead slammed into the steering wheel. Her left arm immediately began hurting as did her lower back within minutes of the accident. Ms. Roy had previously suffered a ruptured disc in her neck and low back prior to the accident.... She had been released from this previous injury only three weeks before this accident ... and was pain free at that time. However, due to this re-injury, the pain has come back and she continues to receive treatment and therapy.

This letter was sent before the surgery on Roy's neck. When asked what he believed was related to the automobile accident, Shepherd stated the treatment Roy received the day of the accident and the follow-up appointment "clearly related to the accident." Shepherd later admitted specifically claiming in a letter to Mr. Nguyen's insurance carrier an MRI which cost $1,156.00 was related to the accident.

The Trial Court issued detailed findings of fact and conclusions of law which were incorporated into its final judgment. As relevant to this appeal, the Trial Court concluded:

There's no question under Exhibit 1 under this pension plan there is a subrogation agreement. There's no question under Exhibit 2 that a notice was given to Mr. Shepherd and the Roys about that subrogation claim. There's no question given that the parties signed an agreement whereby all parties agreed to the extent that there was a subrogation

interest that any proceeds that would be received by the Roys as a result of that subrogation interest would be refunded and paid back to Hamrick's, Inc.'s health benefit plan under Exhibit 2.

Then the accident proceeds, there were expenses of excess of $30,000 as shown in Exhibit 6, and May the 18th of 1999 the parties received from the third party tort-feasor's insurance carrier policy limits of $25,000 settling the claim. The proceeds were divided and no contact was made nor was any effort made to resolve the subrogation to the extent it was subrogated against those funds against this amount.

The question here today is well, yes, they had a subrogation, but does the record establish what amount they're entitled to receive. The Court, I think, needs to go no further than the testimony of Ms. Roy herself saying there's no question that the surgery dealt with left arm pain that occurred after the wreck that wasn't there before the wreck and that the surgery cured that.

If you look at Exhibit 6, the expenses related to that surgery on September the 8th are $9,863.92 for Fort Sanders Regional Medical Center, $1,031.95 to Fort Sanders Anesthesia Group on that same date, and Dr. Burkhart's fee of $11,524.47. That totals $22,420.34. We can debate all day about all of this other stuff, but it's absolutely clear from the defendant's own testimony that that surgery was clearly related to injuries she received in the wreck to cure the radiation of pain down her arm. To that extent Hamrick's would be subrogated to the extent of those expenses, which is as stated some $22,420.34.... Of that amount the Court assumes Mr. Shepherd got, as is stated in the letter in this case, a fee of one third of which he would have gotten $7,473.44 and that the

Roys would have received the net proceeds of that of $14,946.90.

The Court is not unmindful of the right of an attorney to recover for their good work in protecting the interests of a subrogation carrier, but obviously in this case Mr. Shepherd cannot say he protected their interests in that he did nothing to protect it and actually received the money they should have been receiving. So the Court makes no allowance against that $22,000 for any fees which Hamrick's would owe Mr. Shepherd for protecting their subrogation because he did to the contrary. He did not protect their subrogation interests in any way.

The Trial Court then entered judgment against Roy in the amount of $14,946.90, plus prejudgment interest, and against Shepherd for $7,473.44, plus prejudgment interest. Defendants appeal the Trial Court's judgment, raising the following issues which we quote from their brief:

1.  The Trial Court Erred by Failing to Dismiss the Complaint for Lack of Subject Matter Jurisdiction.
2.  The Trial Court Erred by Failing to Apply the "Made Whole" Doctrine.
3.  Did the Hamrick's Plan Administrator, as Fiduciary, Act Arbitrarily and Capriciously in Their Decision to Seek Subrogation and/or Reimbursement?
4.  The Evidence was Simply Insufficient to Support Hamrick's Claim for Reimbursement.

### Discussion

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn.1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn.1999).

■ We first address Defendants' argument that the Trial Court lacked subject matter jurisdiction over Plaintiff's claim. According to Defendants, federal courts have exclusive subject matter jurisdiction over claims by plan fiduciaries seeking reimbursement for sums paid to a plan participant. Defendants base this argument on 29 U.S.C. § 1132(a)(3) and § 1132(e)(1), which provide in relevant part as follows:

**§ 1132. Civil enforcement.**

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\*     \*     \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.] [2]

**(e) Jurisdiction**

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have

---

**2.** The remedies provided in this subsection are in addition to other remedies provided

plan participants and beneficiaries found in other portions of § 1132.

exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 101(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section. . . .

According to Defendants, Plaintiff's claim is made pursuant to 29 U.S.C. § 1132(a)(3), and, therefore, must be filed in federal district court pursuant to 29 U.S.C. § 1132(e). Plaintiff argues its subrogation claim is not a cause of action classified as an ERISA claim for purposes of determining subject matter jurisdiction. In resolving this issue, it is important to note in this appeal Defendants challenge only the Trial Court's subject matter jurisdiction to hear the claim. Defendants do not assert other defenses which may or may not be available, such as federal preemption. We will, therefore, limit our resolution of this first issue to the very specific question presented for review, i.e., whether the Trial Court had subject matter jurisdiction over Plaintiff's claim. We conclude it did.

On January 8, 2002, the United States Supreme Court issued a 5–4 decision in *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). Great West Life and Annuity Insurance Company ("Great West") sued Janette and Eric Knudson to enforce a reimbursement provision of a plan subject to ERISA. The specific issue presented for review was "whether § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 891, 29 U.S.C. § 1132(a)(3) (1994 ed.), authorizes this action by petitioners to enforce a reimbursement provision of an ERISA plan." 122 S.Ct. at 711. The Su-

preme Court concluded it did not. Janette Knudson was rendered a quadriplegic after an automobile accident. Great West filed a lawsuit in federal district court seeking injunctive and declaratory relief to enforce the reimbursement agreement and obtain from the settlement proceeds $411,157.11, all of which, except for $75,000.00, it had paid towards Knudson's medical bills resulting from the accident. In resolving the issue presented for review, the Supreme Court focused heavily on the language in § 1132(a)(3) which authorizes a plan fiduciary to bring an action "to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain *other appropriate equitable relief.* . . ." (emphasis added). The Supreme Court then analyzed whether Great West's cause of action was properly classified as "equitable" relief. According to the Supreme Court, what Great West sought was, in essence:

> to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity. "A claim for money due and owing under a contract is 'quintessentially an action at law.'" *Wal–Mart Stores, Inc. v. Wells,* 213 F.3d 398, 401 (C.A.7 2000) (Posner, J.). "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Bowen v. Massachusetts,* 487 U.S. 879, 918–919, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (SCALIA, J., dissenting). And "money damages are, of course, the classic form of *legal* relief." *Mertens, supra,* [508 U.S.] at 255, 113 S.Ct. 2063.

*Great–West,* 122 S.Ct. at 712–13. After reviewing applicable precedent regarding what was historically considered equitable relief versus legal relief, the Supreme Court concluded the relief sought by Great West was properly deemed legal relief, and because "petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money—§ 502(a)(3)[, 29 U.S.C. § 1132(a)(3) ] does not authorize this action." 122 S.Ct. at 719.

The relief sought by Plaintiff in this case is quite similar to the relief sought in *Great West.* Specifically, Plaintiff is seeking to impose personal liability on Defendants for a contractual obligation to pay money. Pursuant to *Great West,* this is not an action authorized by 29 U.S.C. § 1132(a)(3) because it does not involve equitable relief. It necessarily follows that the jurisdictional limitation found in § 1132(e) limiting jurisdiction to the federal courts does not come into play. Because the jurisdictional limitation in § 1132(e) is not applicable, we conclude the Trial Court had subject matter jurisdiction over Plaintiff's claim.[3]

■ We will address Defendants' second and fourth issues together. The second issue is whether the Trial Court erred by not applying the "made whole" doctrine in this case. Defendants argue Roy was not made whole by the $25,000.00 settlement and Plaintiff, therefore, is not entitled to any of the proceeds from the settlement. Plaintiff argues Roy was made whole by the $25,000.00 settlement. In their fourth issue, Defendants argue there was insufficient proof the neck injury was actually related to the automobile accident, as opposed to being a preexisting condition.

■ A right of subrogation may arise by contract, application of equitable principles of law, or by statute. *Blankenship v. Estate of Bain,* 5 S.W.3d 647, 650 (Tenn. 1999). The right of subrogation is based on two fundamental premises: "1) that an insured should not be permitted recovery twice for the same loss, which would be the potential result if the insured recovers from both its insurer and a tortfeasor; and 2) that the tortfeasor should compensate the insurer for payments the insurer made to the insured." *Id.* Being guided by general principles of equity, our Supreme Court in *Blankenship* further observed "that there is no equitable basis for allowing subrogation where an insured has not been made whole because there simply is no risk that the insured may recover twice for the same loss." *Id.* at 651(citations omitted).

Roy has the burden of proving she was not made whole by the $25,000.00 settlement. *See Nelson v. Innovative Recovery Services, Inc.,* No. M2000–03109–COA–R3–CV, 2001 WL 1480515, 2001 Tenn.App. LEXIS 859 (Tenn.Ct.App. Nov. 21, 2001) (no Rule 11 app. for perm. to appeal filed). In *Tennessee Farmers Mutual Insurance Co. v. Farmer,* No. 03A01–9610–CH–00327, 1998 WL 695637 at *3, 1998 Tenn.App. LEXIS 581 at *9 (Tenn.Ct.App. Aug. 20, 1998) (no Rule 11 app. for perm. to appeal filed), the following is found:

> The Chancellor held that the insurer had the burden of proof to establish that its insured had been made whole, in order to recover its subrogation claim, and that it had not sustained that bur-

---

**3.** In *Great–West,* the Supreme Court expressed no opinion on whether Great West could have intervened in the underlying state court tort lawsuit or whether a direct action by Great West asserting state law claims would have been preempted by ERISA. *Great–West,* 122 S.Ct. at 718. Similarly, these issues have not been presented on appeal in this case, and we likewise express no opinion on these matters.

den. We respectfully disagree. In none of the cases discussing the "full recovery" doctrine it is (sic) suggested that the insurer has the burden of proof. The policy provisions, together with the contractual agreements executed upon advancement of medical expenses, establish a *prima facie* case. To defeat the right of subrogation, the insured must then affirmatively show [if the doctrine is applicable] that she was not made whole.

In the present case, the Trial Court concluded the medical bills from Roy's surgery were related to the automobile accident. The Trial Court further found, based on Roy's testimony, "there's no question that the surgery dealt with left arm pain that occurred after the wreck that wasn't there before the wreck and that the surgery cured that." The evidence in the record does not preponderate against these factual findings of the Trial Court. Roy's claim at trial that virtually none of the medical bills were related to the automobile accident was directly contrary to previous assertions made by her and Shepherd in hopes of maximizing recovery in the car wreck lawsuit. Roy's credibility certainly was a factor the Trial Court was entitled to take into consideration. The trial court's determinations regarding credibility are accorded considerable deference by this Court. *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn.2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999). Roy failed to establish by a preponderance of the evidence that she was not "made whole" by the $25,000.00 settlement. Roy offered no medical proof concerning permanent medical injuries or impairment actually resulting from the accident. Such evidence would, of course, flatly contradict her later testimony that only the ambulance bill and one follow-up visit were related to the accident. Essentially what the Trial Court was left with was testimony that the arm pain was caused by the accident, and was cured by the surgery. We find the evidence does not preponderate against the Trial Court's finding that the surgery was related to the automobile accident. This was based on Roy's own testimony, albeit conflicting most of the time. Roy stated (at least at one point) the surgery was related to the accident, the surgery was for left arm pain and numbness which did not exist prior to the accident, and the surgery took care of this left arm problem. In light of this, we cannot conclude Roy proved by a preponderance of the evidence she was not made whole by the $25,000.00 settlement.

As to the second and fourth issues, we conclude: 1) Roy failed to prove by a preponderance of the evidence she was not made whole by the $25,000.00 settlement; and 2) the evidence does not preponderate against the Trial Court's findings that the surgery and $22,420.34 in related medical expenses were related to the automobile accident.

■ Defendants' final issue involves a claim the Plan Administrator acted arbitrarily and capriciously in deciding to seek subrogation and/or reimbursement. Our standard of review is to determine if the Plan Administrator acted rationally. As recently noted by the United States Court of Appeals for the Sixth Circuit:

Where, as here, the Plan gives the Plan Administrator discretionary authority to construe the terms of the plan, we review the Plan Administrator's decision under the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct.

948, 103 L.Ed.2d 80 (1989). Under this standard, the decision of the Plan Administrator will be upheld if the Plan Administrator acted "rationally in light of the Plan's provisions." *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991). *Smith v. Wal–Mart Associates Group Health Plan,* 238 F.3d 424 (TABLE), 2000 WL 1909387 at *2, 2000 U.S.App. LEXIS 33993 at *6 (6th Cir.2000) (footnote omitted).

Defendants make several arguments as to why the decision to seek reimbursement was arbitrary and capricious. We address only the argument not necessarily rejected already by our conclusions on the other issues (e.g., whether it was arbitrary and capricious to seek reimbursement when Roy was not made whole). Defendants essentially argue the Plan only authorizes subrogation and not reimbursement, so Plaintiff's attempt to seek reimbursement was improper. We believe this argument puts form over substance. The point of the subrogation clause in the Plan is to enable the Plan to recover funds from third parties who are responsible for payments made to a Plan beneficiary. The Plan's subrogation clause *requires* beneficiaries such as Roy to: "execute and deliver instruments and papers and do whatever else necessary to secure such rights to the Plan, and ... do nothing either before or after payment by the Plan to prejudice such rights." In our opinion, this was accomplished by requiring Roy to sign the Agreement. Defendants have not provided this Court with any Plan language that could be interpreted even remotely as prohibiting the Plan Administrator from requiring beneficiaries to sign the Agreement.

We also note we have not been provided with any Plan language detailing the discretionary functions available to the Administrator. Defendants have the duty "to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal." *Nickas v. Capadalis,* 954 S.W.2d 735, 742 (Tenn.Ct.App.1997). In the absence of an adequate record on appeal, this Court will presume the trial court's rulings were supported by sufficient evidence. *See State v. Oody,* 823 S.W.2d 554, 559 (Tenn.Crim.App.1991). Defendants have not provided this Court with any Plan language which would prohibit Plaintiff from seeking reimbursement or otherwise compel a conclusion that the Administrator did not act rationally in light of the Plan's provisions. Accordingly, we hold the decision of the Trial Court is correct as related to this issue.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellants, Deborah Roy and Kevin Shepherd, and their surety.