IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS TO WESTERN SECTION ON MARCH 30, 2007

## STATE OF TENNESSEE v. SCOTTY HENRY PACE, JR.

**Direct Appeal from the Circuit Court for Davidson County**
**Nos. 04D-326 & 04D-327      Muriel Robinson, Judge**

———————————

**Nos. M2004-02156-COA-R3-CV & M2004-02157-COA-R3-CV - Filed on July 30, 2007**

———————————

The appellant's former girlfriend obtained an order of protection against the appellant in June of 2003. In August of 2003, the former girlfriend filed warrants alleging two separate violations of the order of protection by the appellant. The general sessions court found the appellant guilty of criminal contempt for both violations and sentenced the appellant to ten days in jail for each offense. The appellant appealed to the circuit court, which held a hearing and affirmed the convictions. Because the appellant has failed to include in the appellate record the June 2003 order of protection which he was found to have violated, we affirm.

**Tenn. R. App. P. 3.; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Paula Ogle Blair, Nashville, TN, for Appellant

Robert E. Cooper, Jr., Attorney General & Reporter; Pamela Hayden-Wood, Senior Counsel, Nashville, TN, for Appellee

## MEMORANDUM OPINION[1]

### I. FACTS AND PROCEDURAL HISTORY

This is a consolidated appeal of two convictions for criminal contempt for violations of a protective order. Stacy Hill obtained an order of protection against her former boyfriend, Scotty Henry Pace, Jr.("Appellant"), on June 3, 2003, from the General Sessions Court for Davidson County, Tennessee. In August of 2003, Ms. Hill filed two warrants for criminal contempt against Appellant, alleging two separate violations of the protective order.

One warrant filed by Ms. Hill, G.S. 140896, alleged that Mr. Pace violated the order of protection on August 15, 2003, through actions described by Ms. Hill as follows:

> The Respondent indirectly contacted the victim on 08/15/03 at Mega-Tan (a business the victim frequents). The Respondent told "Zack"[,] an employee at Mega-Tan to tell the victim "he loved her and was sorry that the whole thing happened." The Respondent told "Zack" not to tell the victim that he left the message.

Another warrant, G.S. 140897, was based upon Ms. Hill's allegations that on August 17, Appellant had come to a Nashville tanning salon, "Mega Tan," where both she and Appellant were apparently frequent customers, while Ms. Hill and her daughter were present. Ms. Hill again swore by oath that the following events took place:

> The Respondent came to Mega-Tan (a place the victim frequents). He contacted the victim's daughter (who was in the lobby). The daughter became frightened and went to the victim. The Respondent then went to the parking lot and contacted Mega-Tan and asked how long the victim was going to be at the business. The victim then left the business. The Respondent was in the parking lot (by the victim's car). He honked as she was leaving the parking lot.

On October 14, 2003, Mr. Pace was found guilty of criminal contempt by the General Sessions Court for two violations of an order for protection. Mr. Pace appealed to the Davidson

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

County Circuit Court. The Honorable Muriel Robinson conducted a bench trial in circuit court on September 2, 2004, at which the only two witnesses were Ms. Hill and Mega Tan employee Zach Turner. At the beginning of the hearing, counsel for Mr. Pace acknowledged that he had been under an order of protection during the time period in question. Ms. Hill testified that she had been at Mega Tan on August 17, in a tanning room, while her daughter had been sitting in the lounge. She claimed that her daughter had come into the tanning room, "obviously upset and shaking and scared . . . crying, telling [her] how Scotty had come in and talked to her." Ms. Hill testified that she then gathered her things and left the building with her daughter. She claimed that when she and her daughter were running to their vehicle, she saw Mr. Pace sitting in his truck in the Mega Tan parking lot, and that Mr. Pace honked his horn. Ms. Hill also briefly testified regarding another alleged incident occurring two days earlier in which Mr. Turner, the Mega Tan employee, delivered a message to her regarding a phone conversation he had with Appellant.

When Mr. Turner took the stand, he testified that Mr. Pace had entered Mega Tan on August 17, and that Mr. Turner advised Mr. Pace to leave until Ms. Hill and her daughter left in approximately five or ten minutes. Mr. Turner testified that Mr. Pace briefly spoke to Ms. Hill's daughter on his way back out to the parking lot, "asking about his little girl." Mr. Turner testified that Ms. Hill's daughter "seemed fine" after this occurred, and that she continued reading a magazine. Regarding the phone conversation that he had with Mr. Pace on August 15, Mr. Turner responded to questioning as follows:

> Q. All right. And I want to ask you also about a phone call. Did you receive a phone call from Mr. Pace around that time?
> A. Yes.
> Q. And what did he say in that phone call?
> A. The best I remember is just that, you know, sorry about all of this. And I mean, you know, he still loved her.
> Q. And who was he referring to?
> A. Stacy [Hill].
> Q. Sorry about all of this and that he still loved her?
> A. Yeah.
>                                    . . .
> Q. What did you do as a result of that?
> A. I just told Stacy about it.
> Q. You told Ms. Hill about it?
> A. Yeah.
> Q. Did Mr. Pace tell you to say anything or not to say anything to Ms. Hill?
> A. No, ma'am. Not to the best of my recollection.

After hearing testimony, the trial court announced its ruling as follows:

COURT: All right. There are two charges of violation of this order of protection. This is what [t]his Court finds based on the testimony, excluding the witness [Ms. Hill's ten-year-old daughter] that was not ruled competent to testify.

The Court's findings are there was a valid order of protection that was issued. Mr. Pace was aware of that order of protection. The proof shows that Mr. Pace has violated that order of protection by going to this tanning bed. This proof shows to this Court that she was at the tanning salon. Her car was visible. He went there. He talked to the child, knowing he was under an order of protection. He engaged in conversation with her before leaving. This constitutes a violation of this order of protection, him being on the premises and talking to the child. Therefore, [t]he Court rules that the guilty pleas and the sentencing from the General Sessions Court is correct.

So if you will take him into custody. Twenty days.

MS. BLAIR [Appellant's attorney]: Did your Honor find him guilty on the other one as well?

COURT: Guilty on the other one.

The trial court entered judgment finding Mr. Pace guilty of contempt for both violations of the order of protection and affirmed the judgment of general sessions imposing a ten-day sentence in jail for each offense. Mr. Pace filed a timely notice of appeal of both convictions to this Court.

## II. Issue Presented

The sole issue presented for review by this Court on appeal is whether the evidence presented at trial in circuit court was sufficient to sustain the convictions for criminal contempt. Because Appellant has not included a copy of the order of protection from June 3, 2003, in the record filed on appeal, we affirm.

## III. Discussion

Tenn. Code Ann. § 36-3-606(a) (Supp. 2001) provides in relevant part:

A protection order granted under this part to protect the petitioner from domestic abuse may include, *but is not limited to*:
(1) Directing the respondent to refrain from committing domestic abuse or threatening to commit domestic abuse against the petitioner or the petitioner's minor children;
(2) Prohibiting the respondent from telephoning, contacting, or otherwise communicating with the petitioner, directly or indirectly;
(3) Prohibiting the respondent from stalking the petitioner, as defined in § 39-17-315 . . . .

-4-

(emphasis added). When a person is arrested for violating an order of protection, the court shall conduct a hearing to determine whether to hold that person in contempt of court. ***Cable v. Clemmons***, 36 S.W.3d 39, 42 (Tenn. 2001); *see also* Tenn. Code Ann. §§ 36-3-611, -612 (Supp. 2001). "Upon violation of the order of protection or a court-ordered consent agreement, the court may hold the defendant in civil or criminal contempt and punish the defendant in accordance with the law." Tenn. Code Ann. § 36-3-610(a) (Supp. 2001).

Violation of a court's lawful orders is contemptuous conduct, and persons who do so may be found guilty of criminal contempt and, in the absence of a specific statute, may be imprisoned for ten days and fined $50 or both. ***Thigpen v. Thigpen***, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). "[C]riminal contempts are 'intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society.'" ***Doe v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.***, 104 S.W.3d 465, 474 (Tenn. 2003) (quoting ***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn. 1996)). "Punishment for criminal contempt is both punitive and unconditional in nature and serves to adjudicate 'an issue between the public and the accused.'" ***Id.*** (quoting ***Black***, 938 S.W.2d at 398)). In the trial of a criminal contempt case, guilt of the accused must be established by proof beyond a reasonable doubt. ***Black***, 938 S.W.2d at 398. A guilty verdict removes the presumption of innocence, and it is replaced with a presumption of guilt. ***Id.*** at 399; *see also* ***Thigpen***, 874 S.W.2d at 53 ("Persons convicted of criminal contempt lose their presumption of innocence . . . and bear the burden of overcoming their presumption of guilt on appeal.").

When the sufficiency of the convicting evidence is raised as an issue on appeal, this Court must review the record to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt. ***Black***, 938 S.W.2d at 399 (citing Tenn. R. App. P. 13(e)). We do not reweigh the proof, and the defendant has the burden of illustrating to this Court why the evidence is insufficient to support the verdict. ***Id.*** We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. ***Id.*** (citing ***State ex rel. Anderson v. Daugherty***, 137 Tenn. 125, 127, 191 S.W. 974, 974 (Tenn. 1917); ***State v. Creasy***, 885 S.W.2d 829, 831 (Tenn. Crim. App. 1994)).

In this case, Appellant contends in his brief that the State had to prove beyond a reasonable doubt that he violated the order of protection by telephoning, contacting, or otherwise communicating with the petitioner, directly or indirectly. However, Mr. Pace has not included in the appellate record a copy of the order of protection entered in June 2003. Therefore, although Appellant correctly cites Tenn. Code Ann. § 36-3-606(a)(2) for one condition that may be imposed in a protective order, we are unable to review the actual scope of the protective order at issue. Rule 24 of the Tennessee Rules of Appellate Procedure allocates the primary responsibility of preparing the transcript or statement of the evidence to Mr. Pace as the appellant. *See, e.g.*, ***Troglen v. Troglen***, No. E2004-00912-COA-R3-CV, 2005 Tenn. App. LEXIS 255, at *17 (Tenn. Ct. App. Apr. 28, 2005). Additionally, the appellant has the primary burden of seeing that a proper record is prepared on appeal and filed in this Court. ***Id.*** (citing Tenn. R. App. P. 24; ***McDonald v. Onoh***, 772

S.W.2d 913, 914 (Tenn. Ct. App. 1989)). In the absence of an adequate record on appeal, this Court will presume that the trial court's rulings were supported by sufficient evidence. ***Hamrick's, Inc. v. Shepherd***, 115 S.W.3d 468, 478 (Tenn. Ct. App. 2002). Therefore, we affirm the judgment of the trial court.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed against Appellant, Scotty Henry Pace, Jr., and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE