[No. A084037. First Dist., Div. Three. Sept. 29, 2000.]

CARPENTERS HEALTH AND WELFARE TRUST FUND FOR
CALIFORNIA et al., Plaintiffs and Appellants, v.
RODNEY McCRACKEN et al., Defendants and Respondents.

1366

**COUNSEL**

Stanton, Kay & Watson, James P. Watson and Susan J. Olson for Plaintiffs and Appellants.

Lawrence M. Knapp for Defendants and Respondents.

**OPINION**

**McGUINESS, P. J.**—In this opinion, we consider whether the federal Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.)[1] preempts a common law cause of action by an ERISA fiduciary against an ERISA plan beneficiary for breach of an agreement settling an earlier federal court lawsuit concerning the reimbursement of medical benefits paid by the fiduciary. We conclude that it does not.

### I. FACTS

Carpenters Health and Welfare Trust Fund for California (CHWT) is an "employee benefit trust fund established pursuant to an agreement and declaration of trust executed by employer associations representing employers in the unionized construction industry and union representatives affiliated with the United Brotherhood of Carpenters and Joiners of America." CHWT is governed by a board of trustees (Trustees), which established the CHWT health and welfare plan (Plan). The Plan provides medical, hospitalization and other benefits to "covered participants and their eligible dependents," but "requires reimbursement . . . when a participant or eligible dependent recovers from a potentially liable third party."

Rodney McCracken is a carpenter eligible for benefits under the Plan. On September 7, 1994, Rodney's daughter, Jenny McCracken—also eligible for

---

[1]All further statutory references are to title 29 of the United States Code.

Plan benefits as Rodney's dependent—was injured in a pedestrian/motor vehicle accident. Jenny sued those allegedly responsible for her injuries. In the interim, the Plan paid Jenny's medical expenses. Following the accident, Rodney and Jenny (collectively, the McCrackens) signed a reimbursement agreement acknowledging their obligation to reimburse CHWT if they recovered from a third party.

Eventually, the McCrackens received a partial settlement in the sum of $100,000 for Jenny's injuries. CHWT demanded reimbursement for $96,763.42 in medical expenses paid on Jenny's behalf. The McCrackens refused to make any reimbursement. Accordingly, CHWT and the Trustees sued Rodney in federal district court for "restitution" of the $96,763.42.[2]

The parties later settled the federal lawsuit. The settlement was embodied in a "settlement agreement and general release." Under its terms, the McCrackens agreed to pay CHWT $45,000. The McCrackens also agreed to pay CHWT "up to 50 %" of proceeds received by way of "judgment, arbitration award, settlement or otherwise" up to a total of $51,763.42 in connection with the McCrackens' remaining claim against the City of Modesto (the City), the city where Jenny's injury occurred. In addition, the McCrackens agreed to keep CHWT apprised of all proceedings in their action against the City.

Sometime thereafter, CHWT demanded a status report from the McCrackens regarding their case against the City. On January 23, 1998, the McCrackens, through their counsel, tacitly acknowledged a settlement in that case but refused to pay any sums to CHWT, contending that CHWT had no recourse under ERISA and was precluded from suing to recover any funds in either federal or state court.

Based on this refusal, CHWT again sued the McCrackens, this time in state court for common law breach of contract. CHWT alleged that the McCrackens had breached the written settlement agreement by failing to notify CHWT of the settlement with the City and by failing to reimburse CHWT in the sum of $51,763.42. The McCrackens demurred, contending that California state courts lacked jurisdiction over the dispute. CHWT responded, arguing that ERISA did not preempt its state court action. The trial court evidently agreed with the McCrackens and sustained their demurrer on the ground that it lacked "jurisdiction of the subject matter raised by [the complaint]." Judgment was thereafter entered in favor of the McCrackens. This timely appeal followed.

---

[2]Henceforth, for ease of reference, we refer to CHWT and the Trustees collectively as CHWT.

## II. ANALYSIS

This appeal raises a single legal issue—namely, whether CHWT's common law cause of action against the McCrackens for breach of the parties' settlement agreement is preempted by ERISA.[3] For the reasons discussed below, we conclude that it is not.

We begin our analysis with a brief review of the governing legal principles. "ERISA is a comprehensive federal law designed to promote the interests of employees and their beneficiaries in employee pension and benefit plans. [Citation.] As a part of this integrated regulatory system, Congress enacted various safeguards to preclude abuse and to secure the rights and expectations that ERISA brought into being. [Citations.] Prominent among these safeguards is an expansive preemption provision, found at section 514 of ERISA (29 U.S.C. § 1144; [citations].)" (*Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1050-1051 [10 Cal.Rptr.2d 72, 832 P.2d 573].) That provision preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" governed by ERISA.[4] (§ 1144(a).) The parties here vigorously dispute whether CHWT's claim relates to an employee benefit plan within the meaning of section 1144(a) and, hence, is preempted. The case law bearing on this issue is in conflict.

In *Jefferson-Pilot Life Ins. Co. v. Krafka* (1996) 50 Cal.App.4th 190 [57 Cal.Rptr.2d 723] (*Krafka*), the court addressed whether a reimbursement claim made pursuant to the terms of an employee benefit plan was preempted by ERISA. In that case, "[p]laintiff issued a group medical insurance policy to defendant's employer covering employees. The policy provided, among other things, that if a policyholder was injured in an accident caused by the negligence of another and plaintiff paid the insured's medical bills, it would be entitled to reimbursement out of any recovery by the insured under his or her uninsured motorist coverage." (*Id.* at p. 193, fn. omitted.) After sustaining injuries in an automobile accident, "defendant signed a subrogation and reimbursement agreement acknowledging that, as required under the policy, plaintiff would be reimbursed out of any recovery by defendant from a third party." (*Ibid.*, fn. omitted.) Subsequently, the defendant recovered under his uninsured motorist coverage but failed to reimburse the plaintiff for the medical benefits paid on his behalf. (*Ibid.*) Accordingly, the

---

[3]With respect to the original payment of medical benefits, the parties do not dispute that CHWT was an ERISA fiduciary and the McCrackens were ERISA plan beneficiaries.

[4]"[T]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." (§ 1144(c)(1).)

plaintiff filed a state court complaint against the defendant alleging several common law causes of action, including breach of the insurance policy reimbursement provision and breach of the subrogation and reimbursement agreement. (*Ibid.*)

On these facts, our colleagues in the Second District held that the plaintiff's common law causes of action were preempted by ERISA, noting that it was "undisputed plaintiff's claims 'relate to' the plan." (*Krafka, supra,* 50 Cal.App.4th at pp. 192, 194, fn. omitted.) The court concluded that the federal courts had exclusive subject matter jurisdiction over the plaintiff's claim and, therefore, directed that its state court complaint be dismissed. (*Id.* at p. 192.) In reaching this conclusion, the *Krafka* court specifically relied on the availability of a federal court remedy, reasoning as follows: "A cause of action *is* available in federal court to an ERISA fiduciary seeking, as here, reimbursement for medical expenses paid. Section 1132(a)(3) provides a civil action may be brought: '[B]y a participant, beneficiary, or *fiduciary* (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]' (Italics added.) Federal courts have held a claim, as here, for reimbursement pursuant to the plan by an ERISA fiduciary falls within section 1132(a)(3). ([Citations]; see *Pacificare Inc.* v. *Martin* (9th Cir. 1994) 34 F.3d 834, 837, 838.) The ERISA fiduciary can bring an equitable restitution action in federal court to enforce the reimbursement provision of the plan and to prevent the unjust enrichment of the employee. (*Ibid.*) Under *Mertens* v. *Hewitt Associates* (1993) 508 U.S. 248, 256 [124 L.Ed.2d 161, 170, 113 S.Ct. 2063], the phrase 'other appropriate equitable relief' in section 1132(a)(3) means 'those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages.)' (Original italics.) In the present case, plaintiff seeks restitution." (*Krafka, supra,* 50 Cal.App.4th at pp. 195-196.)

Less than a year after *Krafka* was decided, however, the Ninth Circuit held that section 1132(a)(3) *does not* authorize reimbursement actions, reasoning that the relief being sought in such actions was legal and not equitable in nature. (See *FMC Medical Plan* v. *Owens* (9th Cir. 1997) 122 F.3d 1258, 1260-1262 (*Owens*).) Although the *Owens* court did not cite *Krafka*, the court did reject its interpretation of *Mertens* v. *Hewitt Associates, supra,* 508 U.S. 248. (See *Owens, supra,* 122 F.3d at p. 1262 [Reimbursement "is not a form of equitable relief recognized by the narrow construction of section 1132(a)(3) as required by *Mertens*. This court relies on the construction mandated by *Mertens* and declines to extend the interpretation of section

1132(a)(3) to include a claim for reimbursement"].) Ironically, in directing that the plaintiff's federal court complaint be dismissed, the Ninth Circuit pointed to the availability of a *state court* remedy, noting that the plaintiff "will have to pursue its claims under the Plans in state court if it wishes to receive the reimbursement it is allegedly owed by [the defendant]." (*Owens, supra,* 122 F.3d at p. 1262, fn. 2.) These remarks presuppose that such a state court action would *not* be preempted by ERISA.

Further complicating matters, at least three other federal circuits have rejected the approach taken by the Ninth Circuit in *Owens* and have allowed federal court reimbursement actions to proceed under section 1132(a)(3). (See *Administrative Committee v. Gauf* (7th Cir. 1999) 188 F.3d 767, 770-771; *Blue Cross & Blue Shield of Alabama v. Sanders* (11th Cir. 1998) 138 F.3d 1347, 1352-1353, fn. 5; see also *Southern Council of Industrial Workers v. Ford* (8th Cir. 1996) 83 F.3d 966, 969.) Despite this criticism, however, the Ninth Circuit has remained steadfast, just recently declining an invitation to revisit its holding in *Owens*. (See *Reynolds Metals Co. v. Ellis* (9th Cir. 2000) 202 F.3d 1246, 1248-1249 (*Ellis*).)[5]

Taken together, *Krafka* and *Owens* place a plaintiff seeking reimbursement under the terms of an employee benefit plan in a Catch-22. Under *Krafka,* the plaintiff must pursue its reimbursement claim in *federal* court. (*Krafka, supra,* 50 Cal.App.4th at pp. 192, 195-196.) Under *Owens,* by contrast, the plaintiff must pursue its reimbursement claim in *state* court. (*Owens, supra,* 122 F.3d at p. 1262, fn. 2.)

Fortunately, we need not resolve this conundrum in the instant case. Here, we are concerned not with CHWT's original reimbursement claim against the McCrackens, which was the subject of an earlier federal court lawsuit between the parties, but rather with a subsequent action for breach of an agreement settling the earlier lawsuit. Regardless of whether the original action related to an employee benefit plan for the purpose of ERISA preemption, the subsequent action for breach of the parties' settlement agreement almost certainly does not.

As noted above, section 1144(a) preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" governed by ERISA. Notwithstanding this broad language, as well as expansive language

---

[5]While the *Ellis* court did not cite *Krafka,* it did reject the argument that *Pacificare, Inc. v. Martin, supra,* 34 F.3d 834, one of the cases relied on by *Krafka* (see *ante,* at p. 1370), authorized a reimbursement action. (See *Ellis, supra,* 202 F.3d at p. 1249 ["Although *Pacificare* involved a contractual reimbursement provision, we never reached the question of whether reimbursement was an 'equitable' remedy under § 1132(a)(3)"].)

in some of its own prior decisions, the United States Supreme Court has recently cautioned against "uncritical literalism . . . in trying to construe [the phrase] 'relate to.' " (*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995) 514 U.S. 645, 656 [115 S.Ct. 1671, 1677, 131 L.Ed.2d 695] (*Travelers*).) "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere,' [citation]. But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." (*Id.* at p. 655 [115 S.Ct. at p. 1677]; see also *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.* (1997) 519 U.S. 316, 325 [117 S.Ct. 832, 838, 136 L.Ed.2d 791] ["As is always the case in our pre-emption jurisprudence, where 'federal law is said to bar state action in fields of traditional state regulation, . . . we have worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." ' [Citations.]"].)

Accordingly, in determining the breadth of ERISA preemption, courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." (*Travelers, supra,* 514 U.S. at p. 656 [115 S.Ct. at p. 1677].) "ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits. [Citation.]" (*Massachusetts v. Morash* (1989) 490 U.S. 107, 112-113 [109 S.Ct. 1668, 1671, 104 L.Ed.2d 98].) "The focus of the statute thus is on the administrative integrity of benefits plans—which presumes that some type of administrative activity is taking place. [Citations.] [¶] The foregoing makes clear . . . why ERISA is concerned with regulating benefit 'plans' . . . ." (*Fort Halifax Packing Co. v. Coyne* (1987) 482 U.S. 1, 15-16 [107 S.Ct. 2211, 2219, 96 L.Ed.2d 1]; see also *id.* at p. 7 [109 S.Ct. at p. 2215] ["ERISA's pre-emption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit *plans*' . . ."].) In this case, although the settlement agreement between CHWT and the McCrackens relates to employee benefits, it does not relate to an employee benefit *plan*.

The Ninth Circuit's recent decision in *Graham v. Balcor Co.* (9th Cir. 1998) 146 F.3d 1052 (*Graham*), is instructive in this regard. In *Graham*, the parties entered a settlement agreement whereby the plaintiff gave up her

right to pursue a wrongful termination lawsuit in exchange for the defendant's agreement to continue to provide benefits under its employee benefit plan. (*Id.* at p. 1054.) The plaintiff later filed a lawsuit alleging that the defendant had breached the agreement and asserting various state law causes of action. (*Ibid.*) On appeal, the Ninth Circuit rejected the argument that these causes of action were preempted by ERISA, noting that the settlement agreement "concern[ed] only one employee, not the entire plan. Therefore, it falls outside plan administration, and does not trigger preemption." (*Id.* at p. 1055.) The court reasoned that "[t]he intent of ERISA preemption is to establish uniformity in the administration of plans, not in employee-employer settlements which are by necessity individualized. Therefore, we hold that ERISA does not preempt the state claims arising from this legal settlement, the subject matter of which is employee benefits, because it does not implicate the administration of an employee benefit plan." (*Ibid.*)

As in *Graham*, the settlement agreement at issue here concerns only the McCrackens, not CHWT's entire employee benefit plan. Under these circumstances, CHWT's common law cause of action for breach of the agreement is not preempted by ERISA.

### III. DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with directions to overrule the McCrackens' demurrer. CHWT shall recover its costs on appeal.

Corrigan, J., and Parrilli, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 10, 2001.