867 So.2d 1184 (2004)
MEBA MEDICAL & BENEFITS PLAN and Allen Szymczak, Appellants,
v.
Tracey LAGO, Appellee.
No. 4D03-1571.
District Court of Appeal of Florida, Fourth District.
March 3, 2004.
*1185 Christine Williams and Robert H. Ingle, III, of Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, Maryland, Marie Tomassi and Edward C. Larose of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., St. Petersburg, for appellants.
Ted P. Galatis, Jr., of Andrews & Galatis, Fort Lauderdale, for appellee.
HAZOURI, J.
MEBA Medical and Benefits Plan and Allen Szymczak, as administrator of the Plan (hereinafter collectively referred to as MEBA), appeal from the trial court's final judgment of dismissal of MEBA's claim against Tracey Lago.
In this opinion, we consider whether the Federal Employees Retirement Income Security Act of 1974 (ERISA)(29 U.S.C. § 1001 et seq.) pre-empts a common law cause of action by an ERISA fiduciary against an ERISA plan beneficiary for breach of a reimbursement agreement concerning the reimbursement of medical benefits paid by the fiduciary. We conclude that it does and affirm.
On April 15, 2002, MEBA filed a complaint seeking reimbursement for medical benefits paid to Lago. The Plan is a multi employer-employee welfare benefit plan. Lago, the wife of a participant in the Plan, was injured in an automobile accident on November 12, 1996, and as a result, she incurred substantial medical expenses. MEBA paid medical expenses on behalf of Lago in excess of $70,000. Within the Plan documents there is a subrogation reimbursement clause contained in Article XVII-A of the Rules and Regulations of the Plan which states:
In the event any benefit is paid by the Plan on behalf of an Eligible Employee (or his Dependent), the Plan shall be subrogated and succeed to the claimant's rights of recovery therefor against any person or organization except against insurers on policies of insurance issued to and in the name of the claimant. The claimant shall execute and deliver such instrument and take such action as the Plan may require to secure such rights. The claimant shall do nothing to prejudice the rights given the Plan by this Article XVII-A without its written consent.
On December 21, 1996, the Plan, Lago and Lago's husband executed a Subrogation and Reimbursement Agreement which provided in pertinent part:
I(We) understand that in accordance with the Regulations of the MEBA Medical and Benefits Plan ("Plan"), if payments are made thereunder for any treatment, services, or disability because of injury to or sickness of myself or my eligible dependent as to which I or my eligible dependent may have a lawful claim, demand or right against a third party or parties (excluding insurers on policies of insurance issued to and in the *1186 name of my eligible dependent) for indemnification, damages or other payment with respect to such injury or sickness, that I am or my eligible dependent is required to subrogate such claim, demand or right to the Plan to the extent of payments made under the Plan.
Lago filed suit in Georgia against Kermit Sutton for damages sustained in the accident. Lago settled her lawsuit on April 30, 1999, and was paid a substantial lump-sum amount. She did not inform the Plan of the settlement or obtain its written consent. Despite the language of the subrogation and reimbursement clause of Article XVII-A and the execution of the subrogation and reimbursement agreement, Lago refused to reimburse, and MEBA filed this suit based on the reimbursement agreement.
Lago filed a motion to dismiss the complaint arguing that MEBA's causes of action were pre-empted and superseded by ERISA and, therefore, MEBA had failed to state a cause of action. MEBA responded by arguing that its breach of contract claim does not relate to an employee benefit plan and therefore is not pre-empted by ERISA. The trial court dismissed the complaint with prejudice.
The standard of review of orders granting motions to dismiss with prejudice is de novo. See, e.g., Brooke v. Shumaker, Loop & Kendrick, LLP, 828 So.2d 1078 (Fla. 2d DCA 2002). In order to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief. In assessing the adequacy of the pleading of a claim, the court must accept the facts alleged therein as true and all inferences that reasonably can be drawn from those facts must be drawn in favor of the pleader. See Taylor v. City of Riviera Beach, 801 So.2d 259 (Fla. 4th DCA 2001).
The Plan is an employee benefit plan pursuant to ERISA. 29 U.S.C. § 1003. ERISA provides for certain civil actions by fiduciaries such as MEBA. Section 502(a)(3) authorizes a civil action:
by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a)(3). Subsection (e)(1) of 29 U.S.C. § 1132 provides for jurisdiction:
Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
Finally, 29 U.S.C. § 1144 provides in pertinent part:
(a) Supersedure; effective date
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
. . .
(c) Definitions
For purposes of this section:

*1187 (1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.
As set forth above, ERISA's preemption clause provides that ERISA will "supersede any and all State laws" to the extent that those laws "relate to" any employee benefit plan that is subject to ERISA. For purposes of pre-emption, "state law" includes not only statutes but state common law tort and contract actions. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ("Unless these common law causes of action fall under an exception to § 514(a)[29 U.S.C. § 1144], therefore, they are expressly pre-empted."). The Supreme Court has interpreted ERISA's pre-emption provision broadly. A state law relates to an employee benefit plan "if it has a connection with or reference to a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).
MEBA acknowledges that the weight of authority is that ERISA preempts state common law causes of action including breach of contract claims but argues that we should adopt the rationale in Carpenters Health & Welfare Trust Fund for California v. McCracken, 83 Cal. App.4th 1365, 100 Cal.Rptr.2d 473 (2000). We find McCracken distinguishable. In McCracken, Rodney McCracken's daughter was injured in a pedestrian/motor vehicle accident. She sued the tortfeasor and, in the interim, the plan paid her medical expenses. Following the accident, McCracken and his daughter signed a reimbursement agreement acknowledging their obligation to reimburse the plan if they recovered. A partial settlement was made and the plan demanded reimbursement. The McCrackens refused and the plan sued McCracken in federal court for restitution. That suit for restitution was settled and the McCrackens agreed to pay part of the amount due and then to pay "up to 50% of proceeds received by way of judgment, arbitration award, settlement or otherwise' up to a total of $51,763.42 in connection with the McCrackens' remaining claim against the City of Modesto...." Id. at 1368, 100 Cal.Rptr.2d 473. Thereafter, the McCrackens settled with the city without telling the plan and then refused to pay, contending that the plan had no recourse under ERISA in either federal or state court. The plan sued in state court for common law breach of contract. The trial court dismissed for lack of subject matter jurisdiction and the plan appealed.
The issue before the appellate court was whether the plan's common law cause of action against the McCrackens for breach of the settlement agreement was preempted by ERISA. As stated above, the pre-emption provision at 29 U.S.C. § 1144(a) pre-empts "any and all State laws insofar as they ... relate to any employee benefit plan" governed by ERISA. The court did not have to decide whether the original action related to an employee benefit plan, only whether the subsequent (one step removed) breach of the settlement agreement related to the employee benefit plan. In finding that it did not, the court stated:
Accordingly, in determining the breadth of ERISA preemption, courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." (Travelers, supra, 514 U.S. at p. 656, 115 S.Ct.

*1188 1671.)[1] "ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits. [Citation.]" (Massachusetts v. Morash (1989) 490 U.S. 107, 112-113, 109 S.Ct. 1668, 104 L.Ed.2d 98.) "The focus of the statute thus is on the administrative integrity of benefits plans which presumes that some type of administrative activity is taking place. [Citations.] [¶] The foregoing makes clear ... why ERISA is concerned with regulating benefit `plans'...." (Fort Halifax Packing Co. v. Coyne (1987) 482 U.S. 1, 15-16, 107 S.Ct. 2211, 96 L.Ed.2d 1; see also id. at p. 7, 107 S.Ct. 2211 ["ERISA's pre-emption provision does not refer to state laws relating to `employee benefits,' but to state laws relating to `employee benefit plans' ..."].) In this case, although the settlement agreement between [the plan] and the McCrackens relates to employee benefits, it does not relate to an employee benefit plan.

McCracken, 83 Cal.App.4th at 1372, 100 Cal.Rptr.2d 473.
In the instant case, we have a claim for breach of the initial subrogation and reimbursement agreement, not a breach of the settlement agreement as in McCracken. Unlike the settlement agreement in McCracken, which resolved a pending lawsuit, the Reimbursement and Subrogation Agreement executed by Lago and MEBA directly arises from Article XVII-A of the MEBA Plan. At oral argument, counsel for MEBA conceded that without the provisions of Article XVII-A, MEBA would not be entitled to any reimbursement and it would be unable to require Lago to execute the Subrogation and Reimbursement Agreement.
MEBA asserts that the recent decision by the United States Supreme Court in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), has changed the legal landscape of pre-emption. We disagree.
In Knudson, the Supreme Court considered a case with facts similar to those in the instant case but which was originally filed in federal court. The case arose out of an automobile accident which rendered Knudson a quadriplegic. Knudson was covered by a health and welfare plan through her husband's employer. The plan covered $411,157.11 in medical expenses of which Great-West paid all but $75,000. The plan had a reimbursement provision which gave it the right to any recovery paid to the beneficiary by a third party, not to exceed the amount of benefits paid by the plan. The reimbursement provision further imposed personal liability on the beneficiary if she were to recover from a third party and failed to reimburse the plan. The plan assigned to Great-West all its rights under the reimbursement provision.
In 1993, Knudson filed a lawsuit in California state court against several parties, including the car manufacturer, for her injuries. It was settled and portions of the settlement were designated to different accounts. For Knudson's medical care, $256,745.30 was put in a Special Needs Trust account. The defendants put $373,426 in an account for attorney's fees and costs, $5,000 to reimburse the Medi-Cal program, and $13,828.70 to satisfy Great-West's claim under the reimbursement *1189 provision. The state court approved the settlement and ordered the defendant to pay the amount allocated to the Special Needs Trust account directly into that account and the remainder to be paid to Knudson's attorney who was directed to disperse the above-stated amounts to Medi-Cal and Great-West.
Great-West filed a federal court action under ERISA seeking injunctive and declaratory relief, arguing it was entitled to $411,157.11 of the proceeds of the settlement as provided by the reimbursement provision of the plan. The district court granted Knudson summary judgment, finding the settlement limited Great-West's right to reimbursement under the plan to $13,828.70. Great-West appealed. The Ninth Circuit affirmed on other grounds, finding "judicially decreed reimbursement for payments made to a beneficiary of an insurance plan by a third party is not `equitable relief' and is therefore not authorized by § 502(a)(3)." Id. at 209, 122 S.Ct. 708 (citing Great-West Life & Annuity Ins. Co. v. Knudson, 208 F.3d 221 (9th Cir.2000)(unpublished)). The Supreme Court granted certiorari on the issue of whether the relief Great West sought was equitable relief available under § 502(a)(3) or legal relief which is not. Id. The Supreme Court found that Great-West sought "legal reliefthe imposition of personal liability on [Knudson] for a contractual obligation to pay money" which was not available under § 502(a)(3). Id. at 221, 122 S.Ct. 708.
In arriving at its conclusion, the Supreme Court stated:
In the end, petitioners ask us to interpret § 502(a)(3) so as to prevent them "from being deprived of any remedy under circumstances where such a result clearly would be inconsistent with a primary purpose of ERISA," namely, the enforcement of the terms of a plan.
See Brief for Petitioners 30-31. We note, though it is not necessary to our decision, that there may have been other means for petitioners to obtain the essentially legal relief that they seek. We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents or whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been pre-empted by ERISA. Nor do we decide whether petitioners could have obtained equitable relief against respondents' attorney and the trustee of the Special Needs Trust, since petitioners did not appeal the District Court's denial of their motion to amend their complaint to add these individuals as codefendants.
Id. at 220, 122 S.Ct. 708 (emphasis added).
MEBA relies upon dicta in Knudson, in claiming there must be a state remedy if there is not one under ERISA. We do not read this dicta as a mandate that state courts provide an ERISA Plan with a remedy; to the contrary, the Supreme Court was careful to state that it expressed "no opinion" as to whether there is a state law remedy.
We recognize that the holding in Knudson, combined with the pre-emption of state law places MEBA in a "catch-22" situation with no apparent remedy and creates a legal conundrum. However, we are guided by Justice Sealia's cautionary observation in Knudson:
We have observed repeatedly that ERISA is a "`comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." Mertens v. Hewitt Associates, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 *1190 (1993) (quoting Nachman Corp. v. Pension Benefit Guaranty Corporation, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). We have therefore been especially "reluctant to tamper with [the] enforcement scheme" embodied in the statute by extending remedies not specifically authorized by its text. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Indeed, we have noted that ERISA's "carefully crafted and detailed enforcement scheme provides `strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.' " Mertens, supra, at 254, 113 S.Ct. 2063 (quoting Russell, supra, at 146-147, 105 S.Ct. 3085).
Knudson, 534 U.S. at 209.
We too are reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text or creating a remedy based upon the dicta expressed in Knudson. We, therefore, affirm.
AFFIRMED.
POLEN and KLEIN, JJ., concur.
NOTES
[1] N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).