132 P.3d 1229

**AFL HOTEL & RESTAURANT WORKERS HEALTH & WELFARE TRUST FUND, by its Trustees, Cherlyn Logan, Malcolm Sur, Nona Tamanaha, Eric Gill, Gilbert Farias, and Hernando Tan, Plaintiffs–Appellants,**

v.

**Elmer BOSQUE, Defendant–Appellee.**

No. 26631.

Supreme Court of Hawai'i.

April 28, 2006.

---

Ashley K. Ikeda and Lori K. Aquino (of Weinberg, Roger & Rosenfeld), on the briefs, for plaintiffs-appellants AFL Hotel & Restaurant Workers Health & Welfare Trust Fund, by its Trustees, Cherlyn Logan, Malcolm Sur, Nona Tamanaha, Eric Gill, Gilbert Farias, and Hernando Tan.

Janice P. Kim, Honolulu, on the briefs, for defendant-appellee Elmer Bosque.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiff-appellant AFL Hotel & Restaurant Workers Health & Welfare Trust Fund, by its trustees, [hereinafter, AFL] appeals from the June 1, 2004 final judgment of the Circuit Court of the First Circuit [1] in favor of defendant-appellee Elmer Bosque dismissing AFL's complaint against Bosque for breach of a subrogation agreement. On appeal, AFL argues that the circuit court erred by: (1) granting Bosque's motion to dismiss on the basis that the Employment Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 et seq. (2002), preempts an ERISA plan's state law claim against a plan beneficiary for reimbursement, out of proceeds recovered from a third-party tortfeasor, of medical expenses paid on behalf of the beneficiary to cover injuries caused by that third party; and (2) dismissing as moot AFL's motion for summary judgment when there were no genuine issues of material fact and AFL was entitled to judgment as a matter of law. AFL thus asks this court to vacate the judgment below and remand with directions to enter an order grating summary judgment in its favor and award AFL reasonable attorney's fees and costs. Bosque responds that: (1) the circuit court properly dismissed the suit on ERISA preemption grounds; (2) AFL is judicially estopped to deny Bosque's preemption argument based on the inconsistent position taken by AFL in related cases; (3) this court may not consider AFL's motion for summary judgment because it was not granted or denied on the merits; and (4) this court should direct the circuit court to award Bosque reasonable attorney's fees and costs incurred in connection with this action.

---

1. The Honorable Dexter Del Rosario presided over this matter.

Based on the following, we vacate the judgment below and remand for further proceedings.

## I. BACKGROUND

### A. Facts

The following facts are not disputed by the parties. AFL is an employee benefit plan within the meaning of ERISA, of which Bosque was a beneficiary. Bosque admitted that on October 25, 1996, he was injured in a motor vehicle accident. AFL subsequently agreed to pay Bosque's medical expenses on the condition that he sign a subrogation agreement (Agreement). The Agreement, which Bosque admitted he signed on March 2, 2000, stated that Bosque would notify AFL of any third-party recovery arising out of his motor vehicle accident and reimburse AFL out of that recovery. Specifically, the Agreement provided in relevant part as follows:

> I understand that [medical] bills shall be paid [by AFL] on a "loan" basis only, subject to the recovery rights of [AFL] and I agree to promptly repay [AFL] if and when I . . . receive payment(s) from or on behalf of [a] responsible third party.

> I hereby authorize and direct my attorney to notify [AFL] of any claim, action or lawsuit filed on my behalf . . . as a result of the accident. I or my attorney, will notify [AFL] immediately upon receiving any settlement or payment resulting from such a claim[.] I hereby further give an irrevocable lien on any such claim, action or lawsuit to [AFL] against the proceeds of any settlement, judgement [sic] or verdict which may be paid to me . . . as the result of injuries or illness for which I . . . have been treated by reason of the accident. . . .

> I agree that I will not rescind this Agreement, and that any attempted rescission will not be honored by my attorney. I hereby instruct that, in the event another attorney is substituted in this matter, the new attorney shall honor this lien. In the event of any litigation concerning the enforcement or interpretation of this lien, the prevailing party shall be entitled to an award of its attorney's fees and cost [sic].

> I acknowledge that I have carefully read and fully understand all of the provisions of this Subrogation Agreement and the effect of the lien on my entitlement to the proceeds of any payment from a third party.

Bosque admitted that AFL then paid $60,948.83 in medical expenses on his behalf. Bosque also admitted that on June 6, 2002, he obtained a $106,000.00 judgment, after a jury trial, against a third party for his injuries in the accident. Following entry of judgment, Bosque entered into a confidential, "general damages only" settlement with the third party. While the amount of the settlement is not revealed in the record before us, Bosque admitted that the amount exceeded the amount paid by AFL on his behalf in medical expenses. Bosque denied actually receiving any settlement proceeds himself, however, claiming that the proceeds were applied to attorney's fees and costs incurred in pursuing the third-party tort case. Ultimately, Bosque refused to reimburse AFL for any of the money paid on his behalf by AFL.

### B. Procedural History

On February 5, 2003, AFL filed a three-count complaint in the first circuit court against Bosque alleging breach of contract, unjust enrichment, and unlawful rescission, and seeking $60,948.83 in damages plus attorney's fees and costs. Specifically, AFL alleged that "Bosque's repeated and unequivocal refusal to comply with the terms of the Subrogation Agreement and reimburse [AFL] the full amount of $60,948.83 is a breach of the Subrogation Agreement." On April 22, 2003, Bosque filed a motion to dismiss, arguing that ERISA preempted AFL's state-law claims for reimbursement.

On June 19, 2003, AFL filed a motion for summary judgment, arguing that there were no genuine issues of material fact because Bosque admitted to both signing the Agreement and obtaining a third-party recovery. In addition to arguing ERISA preemption, Bosque opposed the summary judgment motion on the grounds that: (1) AFL was collaterally and judicially estopped to deny preemption on the basis of adverse circuit court

rulings and inconsistent positions taken in other cases; and (2) even if AFL's claim were not preempted, Hawai'i Revised Statutes (HRS) § 663–10 (Supp.2002) limits lienholder and subrogee recovery of tort proceeds to a share of special damages, allows a deduction for reasonable fees and costs, and requires that the lienholder timely intervene in the tort action.

On July 9, 2003, both Bosque's motion to dismiss and AFL's motion for summary judgment came on for hearing. On August 6, 2003, the circuit court entered a written order granting Bosque's motion to dismiss, which stated in relevant part as follows:

> Assuming the allegations of [AFL's] complaint to be true, *Au v. Au*, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981), the Court finds that: [AFL] is an employee benefit plan organized under federal laws as an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(1); Defendant Bosque is a beneficiary of the plan who was provided medical benefits under the [AFL] plan to pay for injuries suffered in an automobile accident on or about October 25, 1996; [AFL] in this action seeks reimbursement of those benefits paid to [Bosque].
>
> The United States Supreme Court has held that actions by ERISA plan trustees seeking reimbursement from plan beneficiaries for benefits received are barred by the ERISA statute. *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); *Westaff(USA) Inc. v. Arce*, 298 F.3d 1164 (9th Cir.2002).[AFL] in this action has thus failed to state a claim upon which relief can be granted, *Blair v. Ing*, 95 Hawai'i 247[,] 21 P.3d 452 (2001); [Hawai'i Rules of Civil Procedure (HRCP) Rule] 12(b)(6).

On September 15, 2003, the circuit court entered an order declaring AFL's motion for summary judgment moot inasmuch as Bosque's motion to dismiss had already been granted.

On February 4, 2004, AFL filed a motion for reconsideration of the circuit court's August 6, 2003 and September 15, 2003 orders based on: (1) subsequently entered state circuit court rulings in other cases on the same ERISA-preemption issue; and (2) a new Ninth Circuit Court of Appeals opinion directly addressing the issue, *Providence Health Plan v. McDowell* [hereinafter, *Providence*], 361 F.3d 1243, *reh'g en banc denied,* 385 F.3d 1168 (9th Cir.2004), *cert. denied,* 544 U.S. 961, 125 S.Ct. 1726 (2005) and 544 U.S. 961, 125 S.Ct. 1735 (2005). After a March 31, 2004 hearing, the motion was denied pursuant to a written order entered on May 6, 2004.

On June 1, 2004, the circuit court entered final judgment in favor of Bosque dismissing the complaint. On June 18, 2004, AFL filed a timely notice of appeal in this court.

## II. *STANDARD OF REVIEW*

A trial court's ruling on a motion to dismiss is reviewed *de novo*. *Bremner v. City & County of Honolulu*, 96 Hawai'i 134, 138, 28 P.3d 350, 354 (App.2001). The court must accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff; dismissal is proper only if it appears beyond doubt that the plaintiff "can prove no set of facts in support of his or her claim that would entitle him or her to relief." *Dunlea v. Dappen*, 83 Hawai'i 28, 32, 924 P.2d 196, 200 (1996), *overruled on other grounds by Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 105–06, 73 P.3d 46, 59–60 (2003) (citations omitted).

## III. *DISCUSSION*

The principal issue in the instant suit—*i.e.*, the ability of an ERISA plan to enforce reimbursement agreements such as the Agreement here—has been the focus of frequent litigation in federal and state courts in recent years. The disputed point here is whether and to what extent federal law expressly or impliedly preempts actions brought by the plan under state law to force plan beneficiaries to reimburse them for medical expenses paid by the plan where those expenses were caused by a third party and the beneficiary has obtained a recovery from that third party. For the reasons set forth below, we hold that AFL's state law claim in the instant case is not expressly or impliedly preempted by ERISA. According-

ly, the circuit court erred in dismissing AFL's complaint.

## A. *ERISA Jurisdiction and Preemption*

The dispute in this case stems from confusion regarding the scope and interplay of two different sections of ERISA: (1) the jurisdictional provisions of section 502(a)(3),[2] codified at 29 U.S.C. § 1132(a)(3) (2002); and (2) the preemption clause of section 514(a), codified as 29 U.S.C. § 1144(a) (2002). In full, section 502(a)(3) provides that a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate *equitable* relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan[.]

(Emphasis added.) Section 502(e)(1) of ERISA, codified at 29 U.S.C. § 1132(e)(1) (2002), in turn provides that federal courts "shall have exclusive jurisdiction of civil actions" brought under section 502(a)(3).

The question thus immediately arises as to whether an ERISA plan's reimbursement or subrogation interest in a third-party tort recovery should be considered equitable or legal; if the former, then a reimbursement action should be brought in federal courts under section 502(a)(3). The United States Supreme Court addressed this issue in *Great–West*, one of the cases cited by the circuit court here. In that case, an ERISA plan brought an action under section 502(a)(3) for declaratory and injunctive relief

in federal court seeking to enforce a plan provision requiring a beneficiary to reimburse the plan, out of any subsequent recovery by the beneficiary from a third-party tortfeasor, for payment of the beneficiary's medical expenses resulting from injuries caused by the third party. 534 U.S. at 208, 122 S.Ct. 708. The Ninth Circuit held that the relief sought was not equitable and thus the suit was not authorized under section 502(a)(3). *Id.* at 209., 122 S.Ct. 708 The United States Supreme Court affirmed, holding that "[b]ecause [the plan is] seeking legal relief—the imposition of personal liability on [the plan beneficiary] for a contractual obligation to pay money— § 502(a)(3) does not authorize this action." *Id.* at 221, 122 S.Ct. 708. Significantly, however, the *Great–West* Court expressly reserved its opinion on whether a plan could seek reimbursement *outside* of ERISA, stating:

> We note, though it is not necessary to our decision, that there may have been other means for petitioners to obtain the essentially legal relief that they seek. *We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents or whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been pre-empted by ERISA.*

*Id.* at 220, 122 S.Ct. 708 (emphasis added). Here, because AFL has brought a state law breach of contract claim against a plan beneficiary, we are faced with the question left open by *Great–West*.[3]

---

**2.** The parties do not dispute that AFL's trustees are fiduciaries of the plan and that section 502(a)(3) would be the only means, if any, for AFL to bring this suit in federal court.

**3.** Since *Great–West*, ERISA plans have struggled to distinguish the court's ruling based on dictum suggesting that the legal-equitable distinction might turn on whether the beneficiary has possession of the third-party recovery in an identifiable fund. *See Great–West*, 534 U.S. at 214, 122 S.Ct. 708 ("The basis for [the plan's] claim is not that [the beneficiaries] hold particular funds that, in good conscience, belong to [the plan], but that [the plan is] contractually entitled to *some* funds for benefits that they conferred."). The Ninth Circuit (later joined by the Sixth Circuit), in a case cited by the circuit court here, has taken the

view that the claim is legal regardless of who possesses the money. *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164, 1167 (9th Cir.2002); *Carpenters Health & Welfare Trust for Southern California v. Vonderharr*, 384 F.3d 667, 672–73 (9th Cir.2004). *See also QualChoice, Inc. v. Rowland*, 367 F.3d 638, 649–50 (6th Cir.2004) (same). On the other hand, the Fourth, Fifth, Seventh, and Tenth Circuits hold that when an ERISA plan seeks to recover specifically identifiable tort-recovery proceeds that belong in good conscience to the plan and are within the possession and control of the plan participant or beneficiary, the action is equitable. *Mid Atlantic Medical Services, LLC v. Sereboff*, 407 F.3d 212, 217–19 (4th Cir.2005); *Admin. Comm. of the Wal–Mart Assoc. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1122 (10th Cir.2004); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansb-*

To answer the question framed by the *Great West* Court, this court must decide whether ERISA preempts a state law claim such as the one brought here by AFL. We recently set forth the framework of ERISA preemption analysis in *Hawaii Mgmt. Alliance Assoc. v. Ins. Comm.* [hereinafter, *HMAA* ], 106 Hawai'i 21, 100 P.3d 952 (2004). In *HMAA,* we observed that a state law "will be deemed [impliedly] preempted if it conflicts with § 1132(a) ('conflict' preemption) or if Congress intended ERISA to occupy the entire field ... ('field' preemption)." *Id.* at 30, 100 P.3d at 961 (citation omitted). In addition, ERISA's express preemption clause, section 1144(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Id.* at 27, 100 P.3d at 958 (emphasis deleted). In other words, a state-law claim may be expressly preempted by section 1144(a) or impliedly preempted under section 1132(a). For the reasons set forth below, we hold that neither situation obtains here.

### 1. ERISA Does Not Impliedly Preempt AFL's State Law Claim for Reimbursement Pursuant to a Subrogation Agreement.

Neither the doctrine of implied field preemption nor the doctrine of implied conflict preemption preclude an ERISA plan from bringing a state common-law action for reimbursement. First, with respect to field preemption, this court has previously held that it does not apply in the ERISA context because the existence of an express preemption clause in ERISA and the fact that health care is a subject of traditional state regulation demonstrate no clear and manifest in-

tent to supersede state law. *HMAA,* 106 Hawai'i at 30–31, 100 P.3d at 961–62.

■ As to conflict preemption, we have held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 31, 100 P.3d at 962 (quoting *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004)). However, the United States Supreme Court has expressly held that section 502(a)(3) of ERISA provides *no* legal remedy for reimbursement of expenses paid on behalf of plan beneficiaries for injuries caused by third parties. *Great–West,* 534 U.S. at 221, 122 S.Ct. 708. It is thus patent that a state law claim for relief for breach of contract such as the one brought here by AFL does not duplicate or supplant any federal cause of action under ERISA.

That being said, there is still a question regarding the word "supplement" as used in *Aetna.* The *Aetna* Court emphasized:

> [I]t [would not] be consistent with our precedent to conclude that only strictly duplicative state causes of action are preempted.... Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.

*Aetna,* 542 U.S. at 216, 124 S.Ct. 2488. Fortunately, however, the *Aetna* Court identified the key to distinguishing between supplementary and independent causes of action, holding that the distinction turns on whether

rough, 354 F.3d 348, 356–58 (5th Cir.2003); *Admin. Comm. Of the Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco,* 338 F.3d 680, 687–88 (7th Cir.2003). On November 28, 2005, the United States Supreme Court granted certiorari in *Sereboff* to resolve the circuit split. *Sereboff v. Mid Atlantic Medical Services, LLC,* 546 U.S. ——, 126 S.Ct. 735, 163 L.Ed.2d 567 (2005). Regardless of how the legal-equitable question is ultimately answered, however, the salient point is that neither *Great–West* nor *Westaff* address the preemption question before this court. As Bosque concedes, AFL does not specifically identify

any tort-recovery proceeds in Bosque's possession belonging in good conscience to it. Therefore, this court need not take sides in the dispute among the federal circuits over the characterization of certain reimbursement actions as legal or equitable because AFL's claim cannot be construed as equitable even under the standard of the Fourth, Fifth, Seventh, and Tenth Circuits. Accordingly, for present purposes we need only note that reliance on *Great–West* and *Westaff* would be misplaced with respect to the proposition that AFL's claim for reimbursement *under state common law* is preempted.

liability would exist only because of the ERISA plan; that is, whether the beneficiary's potential liability "derives entirely from the particular rights and obligations established by the benefit plan[ ]." *Id.* at 213, 124 S.Ct. 2488. *See also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (holding that a state-law wrongful discharge claim was preempted because it was premised on the existence of the ERISA plan). Here, however, Bosque's liability is not entirely derived from the terms of the AFL plan; rather, liability is dependent on the Agreement, which is independent of the rights and obligations established by the plan.[4] Therefore, a state law breach of contract action, in which liability rests at least in part on the Agreement, does not "supplement" a federal claim for relief as that term is used in *Aetna,* and there is no conflict preemption.

## 2. ERISA Does Not Expressly Preempt State–Law Claims for Reimbursement Pursuant to a Subrogation Agreement.

■ In addition to creating federal claims for relief under ERISA, Congress also provided for the express preemption of all state-law actions "related to" ERISA. 29 U.S.C. § 1144(a). We previously considered the scope of ERISA's express preemption clause in *Garcia v. Kaiser Foundation Hospitals,* 90 Hawai'i 425, 978 P.2d 863 (1999). In *Garcia,* we recognized the United States Supreme Court's view that a state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Id.* at 432, 978 P.2d at 870 (citation omitted). This court, again citing United States Supreme Court precedent, also remarked on the "conspicuous breadth" of ERISA preemption implied by the phrase "relate to," and noted that ERISA could preempt state law claims even where the law is not specifically designed to affect ERISA plans or the effect is indirect. *Id.* at 431–32, 978 P.2d at 869–70.

However, despite the acknowledged breadth of ERISA's express preemption clause, the United States Supreme Court has also stated that there are limits to its scope, such that "infinite relations cannot be the measure of pre-emption" in construing "relate to" because "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for really, universally, relations stop nowhere." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* [hereinafter, *Travelers* ], 514 U.S. 645, 655–56, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (internal quotation marks, brackets, and citation omitted). *See also Dist. of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (stating that there is no preemption "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability") (internal quotation marks and citation omitted). Recognizing that "relate to" cannot be infinite in scope, this court in *Garcia* adopted the approach of the United States Court of Appeals for the Eighth Circuit, holding that state law claims are expressly preempted where they rely on a person's "status as a beneficiary under the [ERISA] plan *and ar[i]se from the administration of benefits under the plan.*" *Garcia,* 90 Hawai'i at 433, 978 P.2d at 871 (citing *Kuhl v. Lincoln National Health Plan of Kansas City, Inc.,* 999 F.2d 298, 303–04 (8th Cir.1993)) (emphasis added). *See also Egelhoff v. Egelhoff,* 532 U.S. 141, 147–48, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (holding that a state statute providing that a beneficiary designation is automatically revoked on divorce was preempted because it bound "plan administrators to a particular choice of rules for determining beneficiary status" and thus "govern[ed] the payment of benefits, a central matter of plan administration"); *Calif. Div. of Labor*

---

4. Bosque argues that the terms of the plan are necessarily implicated because the Agreement contains no terms that vary from those in the plan; Bosque was given no benefits in addition to those owed him under the plan; and therefore he received no consideration for signing the Agreement (*i.e.,* AFL had a pre-existing duty to pay his expenses). However, even assuming this characterization is accurate, Bosque's argument fails because, as set forth below in Section III. A.2, the mere fact that the existence of an ERISA plan and a violation of one of its terms may be implicated in a state law claim is not sufficient to invoke ERISA preemption.

*Stndrds. Enf. v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 334, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (holding that a state wage law was not preempted because it did not "dictate the choices[ ] facing ERISA plans"); *Travelers*, 514 U.S. at 658, 115 S.Ct. 1671 (observing that a state law is preempted when it "mandate[s] employee benefit structures or their administration"); *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 108, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (concluding that state law was preempted where it required the provision of benefits in a manner not required by federal law); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 524–25, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (holding that a state statute was preempted because it prohibited a method for calculating plan benefits that was allowed under federal law).

Applying the rule in *Kuhl* to determine whether the state common law claims asserted in *Garcia* for breach of contract, fraud, infliction of emotional distress, and unfair and deceptive trade practices, *inter alia*, were preempted, we noted that each claim was based on the "underlying contention that [the plan] failed to provide [the beneficiary] with reasonable and necessary medical services to which he believed he was entitled under his health plan." *Garcia*, 90 Hawai'i at 433, 978 P.2d at 871. Consequently, we held as follows:

**5.** In addition to *Garcia*, AFL also refers us to our decision in *Hawaii Laborers' Trust Funds v. Maui Prince Hotel* [hereinafter, *HLTF*], 81 Hawai'i 487, 918 P.2d 1143 (1996). In *HLTF*, an ERISA plan brought a state law action to foreclose liens on properties in order to collect unpaid default judgments for delinquent ERISA contributions. *Id.* at 490–91, 918 P.2d at 1146–47. Although this court held that the state lien law at issue did not "relate to" ERISA and thus was not preempted, *HLTF* does not guide the present inquiry because there, the ERISA plan was suing as a judgment creditor, not as a subrogee. The appropriate analogy would be if AFL had brought suit against Bosque for breach of the Agreement, received a default judgment or entered into a settlement of that suit, and then, after Bosque failed to pay the settlement or judgment, brought a second suit on the judgment or settlement. This was in fact what happened in *Carpenters Health & Welfare Trust Fund for Calif. v. McCracken*, 83 Cal.App.4th 1365, 100 Cal. Rptr.2d 473 (2000) (allowing a suit where an

Essentially, as in *Kuhl*, [the plan beneficiaries] assert[ ] that [the ERISA plan] improperly withheld benefits under the health plan agreement. In order to have prevailed at trial, [the beneficiaries] would have had to show that [the ERISA plan] improperly refused to cover the [recommended surgical procedure]. As [the ERISA plan] argues, the adjudication of [the beneficiaries'] claims against [the plan] would necessarily involve an inquiry into: (1)[the] administration of the health plan; (2) the medical services that were provided by the health plan; and (3) the medical services that were provided by [the plan operator] as an HMO. Therefore, [the beneficiaries' state common law claims] undoubtedly "related to" an employee health plan agreement. Accordingly, we hold that the [beneficiaries' claims] were preempted by ERISA.

*Id.* Here, however, there is no claim that AFL improperly withheld benefits, no need to inquire into the medical services provided, and no need to inquire into the administration of the plan or its benefit structures. Because the sole issue is whether AFL is entitled to money damages based on the breach of a contractual agreement, we find that the instant case is distinguishable from *Garcia*.[5]

This view is consistent with the Ninth Circuit's conclusion in *Providence* that an ERISA plan's state law claims for reimburse-

ERISA plan sued a beneficiary for breach of agreement pursuant to which the parties had agreed to settle a prior suit by the plan for breach of a reimbursement agreement), a case also cited as support by AFL. The *McCracken* Court expressly noted that, under such circumstances, it need not address the thorny preemption issue, stating:

Fortunately, we need not resolve [the preemption issue] in the instant case. Here, we are concerned not with [the plan's] original reimbursement claim against the [beneficiaries], which was the subject of an earlier federal court lawsuit between the parties, but rather with a subsequent action for breach of an agreement settling the earlier lawsuit. Regardless of whether the original action related to an employee benefit plan for the purpose of ERISA preemption, the subsequent action for breach of the parties' settlement agreement almost certainly does not.

*Id.* at 1371, 100 Cal.Rptr.2d at 476. Accordingly, *HLTF*, like *McCracken*, is inapposite here.

ment of medical expenses paid on behalf of a plan beneficiary out of a third-party tort recovery is not preempted by ERISA. In that case, an ERISA plan brought a state law breach of contract action against plan beneficiaries seeking reimbursement, out of proceeds from a third-party tort recovery, of benefits paid to cover the beneficiaries' injuries caused by the third party. 385 F.3d at 1171. After the beneficiaries removed the case to federal court, the trial judge dismissed on the basis of ERISA preemption. *Id.* On appeal, the Ninth Circuit reversed, noting that the *Great–West* Court had explicitly left the issue open, *id.* at 1173, and holding:

> The district court erred in [dismissing the complaint] because [the ERISA plan's] action for breach of contract does not have the requisite "connection with" or "reference to" an ERISA plan. [The plan] is simply attempting, through contract law, to enforce the reimbursement provision [of the plan]. Adjudication of its claim does not require interpreting the plan or dictate any sort of distribution of benefits. [The plan] has already paid ERISA benefits on behalf of the beneficiaries, and they are not disputing the correctness of the benefits paid. Rather, [the plan] claims that the [beneficiaries] have breached two promises: (a) the reimbursement provision incorporated into their ERISA plan, as it applies to monies paid to them by a non-ERISA third party, and (b) their agreement to direct their lawyer to reimburse [the plan] in the event of a settlement. Because this is merely a claim for reimbursement based upon the third-party settlement, it does not "relate to" the plan.

*Id.* at 1172 (citation omitted). *Cf. Hamrick's, Inc. v. Roy,* 115 S.W.3d 468, 474–76 (Tenn.Ct. App.2002) (holding that a state law action for breach of a reimbursement agreement by an ERISA plan against a beneficiary was not jurisdictionally barred under 29 U.S.C. § 1132(e)); *Behavioral Sci. Inst. v. Great–West Life,* 84 Wash.App. 863, 930 P.2d 933, 939 (1997) (concluding that a state law action by an ERISA plan against a reinsurer for breach of reinsurance contract was not preempted by ERISA, even though the dispute referenced the ERISA plan, because

the case did not involve a beneficiary coverage dispute or a complex plan interpretation substantively affecting ERISA law). The reasoning in *Providence* is consistent with *Garcia* and equally applicable here: first, AFL does not dispute the correctness of the benefits already paid, nor would this court's decision affect the distribution of benefits or administration of the plan. Second, also as in *Providence,* AFL claims that the beneficiary has breached his contractual promise to reimburse the plan out of the proceeds of any third-party recovery.

At first glance, the *Garcia–Providence* tandem would appear to be dispositive. However, as the Ninth Circuit panel in *Providence* noted, a finding of no preemption is directly in conflict with the decisions of some state courts. The *Providence* Court rejected the opposing view on the basis that those courts' construction of "relate to" is not supported by *Great–West. Providence,* 385 F.3d at 1173 (citing with disapproval *Liberty N.W. Ins. Corp. v. Kemp,* 192 Or.App. 181, 85 P.3d 871 (2004), and *Jefferson–Pilot Life Ins. Co. v. Krafka,* 50 Cal.App.4th 190, 57 Cal.Rptr.2d 723 (1996)). Bosque relies heavily on the Oregon Court of Appeals' decision in *Kemp.* In that case, on essentially the same facts as presented here, the court held:

> [I]n this case ERISA has preemptive force. [The ERISA plan's state law] complaint derives from and is based on an employee benefit plan. It alleges that "[the beneficiary] was covered under [an ERISA plan]," that "[t]he [plan] provides ... that when [the plan] has paid benefits on behalf of [the beneficiary], [the plan] will be subrogated to all rights of recovery that [the beneficiary] has against the person who is at fault," that "pursuant to the terms of the [plan], ... [the beneficiary] completed and signed a Reimbursement Agreement," and that "[the beneficiary's] failure and refusal to reimburse plaintiff out of the proceeds of his recovery for the accident is in violation of the terms of the policy." *To prevail, [the plan] had to prove the existence of the [ERISA plan] and a violation of one of its terms.*

*Kemp,* 85 P.3d at 877 (emphasis added; first ellipsis added, second ellipsis in original).

*See also MEBA Med. & Benefits Plan v. Lago,* 867 So.2d 1184, 1188–90 (Fla.Dist.Ct. App.2004) (holding that ERISA preempted a plan's state law reimbursement claim because the claim would require the existence of a plan and violation of one the plan's terms). *Kemp* is unpersuasive because it is overbroad; in requiring only the existence of a plan, *Kemp* takes "relates to" to the "furthest stretch of its indeterminacy," a construction rejected by the United States Supreme Court in *Travelers* and by this court in *Garcia.* In order for the state law claim to be "related to," and thus preempted by, ERISA, *Garcia,* like *Providence* and unlike *Kemp,* requires not just the existence of an ERISA plan, but questions involving the plan's administration and the benefits provided. As set forth above, such involvement is not implicated here, and thus there is no express preemption. Accordingly, the circuit court erred in dismissing AFL's complaint.

**B.** *AFL's Motion for Summary Judgment Is Not Ripe for Appellate Review.*

 AFL argues that the circuit court's order "mooting" its motion for summary judgment effectively amounted to a denial of the motion, which this court may review and reverse because there are no genuine issues of material fact in dispute. Bosque counters that this court lacks appellate jurisdiction because there is no order granting or denying the motion that can be reviewed. We agree with Bosque and hold that where the trial court neither grants nor denies a motion for summary judgment, the issues presented therein are unripe for appellate review.

 This court has long held to the general rule that questions "not ... ruled upon by the trial judge will not be considered and passed upon for the first time on appeal." *State v. Cummings,* 49 Haw. 522, 527, 423 P.2d 438, 442 (1967) (citations omitted). Here, the trial court did not rule upon AFL's motion for summary judgment; therefore, this court may not pass upon AFL's assignments of error because to do so in the first instance would be premature. *See Atlanta*

*Journal–Constitution v. Jewell,* 251 Ga.App. 808, 555 S.E.2d 175, 187 (2001) ("Enumerations of error relating to a motion for summary judgment which have not yet been ruled upon are not ripe for appellate review because there has been no ruling below, and this Court may not address these issues in the first instance." (Footnote omitted.)); *see also Czaplicki v. Gooding Joint School Dist. No. 231,* 116 Idaho 326, 775 P.2d 640, 646–47 (1989) (holding that where the trial court did not rule on a motion because a prior order had rendered the motion moot, the unruled-upon motion was unripe for appellate review). Accordingly, we decline to review both AFL's motion for summary judgment and Bosque's estoppel and collateral source objections raised with respect thereto.

### IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's June 1, 2004 final judgment and remand for further proceedings consistent with this opinion.[6]

---

6. In light of the foregoing disposition, AFL's and Bosque's requests for fees and costs are also premature, and thus not addressed herein.